1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLIN WILLIAMS, | Case No.  1:18-cv-00611-JLT-BAM (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| NAVARRO, *et al.*, | (ECF No. 29) |
| Defendants. | FOURTEEN (14) DAY DEADLINE |

## I.    Background

Plaintiff Collin Williams ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's complaint against Defendants Santiesteban[1] and Cortez for excessive force in violation of the Eighth Amendment; (2) Defendants Navarro and Sanchez for failure to intervene in violation of the Eighth Amendment; (3) Defendants Navarro, Andrzejewski,[2] and Brown for deliberate indifference in violation of the Eighth Amendment; (4) Defendants Santiesteban and Cortez for assault and battery in violation of state law; and (5) Defendants Andrzejewski and Brown for medical negligence in violation of state law.

On July 31, 2019, Defendants Andrzejewski, Santiesteban, Cortez, Navarro, Sanchez,

---

[1] Sued as "Santiestban."
[2] Sued as "Andrezejewski."

1

and Brown ("Defendants") filed a motion for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies for the federal claims asserted against them, as required by the Prison Litigation Reform Act, and for failure to comply with the California Government Claims Act requirements for his state law claims.[3]  Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 574 U.S. 968 (2014).  (ECF No. 29.)  Plaintiff filed an opposition on August 29, 2019.  (ECF No. 31.)  Defendants did not file a reply.

The motion for summary judgment is deemed submitted.  L.R. 230(l).

## II.    Defendants' Motion for Summary Judgment

### A.  Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th

---

[3] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 29-3.)

Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. *Id.* (quotation marks omitted).

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino,* 747 F.3d at 1166, and he must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

3

1    **III.    Discussion**

2         **A.    Summary of CDCR's Administrative Review Process**

3         Until September 1, 2017, all inmate grievances – including health care grievances – were

4    governed by the same provisions of the California Code of Regulations, title 15, §§ 3084-3086.

5    *See Gallardo v. Bourne*, No. 20-CV-09184 JSW, 2023 WL 3569997, at *10 (N.D. Cal. May 19,

6    2023).   Under these regulations, appeals were subject to three levels of administrative review

7    before administrative remedies were deemed exhausted.   Cal. Code Regs. tit. 15, § 3084.7.   The

8    process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at § 3084.2(a).

9    In the appeal form, prisoners must list all staff members involved and describe their involvement

10   in the issue. *Id.* at § 3084.2(a)(3). If the inmate does not have the requested identifying

11   information about the staff member, he must provide any other available information that would

12   assist the appeals coordinator in making a reasonable attempt to identify the staff member in

13   question. *Id.*

14        After September 1, 2017, inmate health care grievances were governed by a separate set

15   of regulations, which can now be found at Title 15, §§ 3999.225-3999.237, of the California Code

16   of Regulations.   Whereas the process previously provided for three levels of administrative

17   review for health care appeals, the new regulations involve only two levels, an institutional level

18   of review and a headquarters level of review.   *Id.* § 3999.226(a)(1).   Health care grievances are

19   exhausted only after headquarters completes its review.   *Id.* § 3999.226(g). Like section 3084.2,

20   section 3999.227(g) requires inmates to "document clearly and coherently all information known

21   and available" to the inmate when preparing and submitting a health care grievance.   *Id.* §

22   3999.227(g). This includes identifying "any involved staff member's last name, first initial, title

23   or position, and the date(s) and description of their involvement." *Id.* § 3999.227(g)(1).

24        **B.    Relevant Allegations in the Operative Complaint**

25        This action proceeds on Plaintiff's complaint filed on May 3, 2018, for the following:  (1)

26   excessive force in violation of the Eighth Amendment against Defendants Santiesteban and

27   Cortez; (2) failure to intervene in the use of excessive force in violation of the Eighth Amendment

28   against Defendants Navarro and Sanchez; (3) Deliberate indifference to serious medical needs

4

against Defendants Navarro, Andrzejewski, and Brown; (4) assault and battery against Defendants Santiesteban and Cortez; and (5) medical negligence against Defendants Andrezjewski and Brown.  (ECF No. 12.)

Plaintiff alleges that on December 7, 2017, at approximately 8:30 a.m., he told Defendant Sanchez that he was going to file a staff complaint against him for harassment. That same day, at approximately 9:40 a.m., Defendants Navarro, Cortez, and Santiesteban came to Plaintiff's cell. Plaintiff asked what was going on, but did not receive a response. Defendant Sanchez then opened Plaintiff's cell door, and Defendant Navarro told Plaintiff to cuff up. Plaintiff immediately complied.

After handcuffs were applied, Defendants Cortez and Santiesteban escorted Plaintiff downstairs to the lower shower, where Plaintiff was locked inside. Plaintiff again asked Defendants Cortez and Santiesteban what was going on, but he received no answer. Plaintiff was told to strip out, and Plaintiff complied by taking off all of his clothes and placing them on the shower bars.  After a strip search, Plaintiff received his clothing and dressed. Plaintiff also asked why he was strip searched. Defendant Santiesteban told Plaintiff that they did not need a reason.

Plaintiff and his cell were searched, but found clean. However, Defendants Navarro, Cortez and Santiesteban returned and told Plaintiff to strip out again. Plaintiff submitted to the second strip search. Plaintiff also asked Defendant Navarro for an explanation, and Defendant Navarro replied that asking questions only made it worse.

Plaintiff advised all three defendants that he would be filing a complaint regarding his treatment. Defendant Cortez stated that Plaintiff wanted to play the paperwork game. Defendant Navarro then called a meeting with Defendants Cortez, Sanchez and Santiesteban. After the meeting, Defendant Navarro stated, "This is my yard. Bad choice Mr. Williams. My officers always win the paperwork game." (ECF No. 1 at 5.) Plaintiff heard Defendant Santiesteban tell Defendant Sanchez, "the regular slam dunk." (*Id.*) Defendant Sanchez then stated, "Let me lock up all the porters and kitchen workers." (*Id.*)

After the porters and kitchen workers were in their cells, Defendants Cortez and Santiesteban returned to the shower and Plaintiff was directed to turn around and walk

backwards. Plaintiff complied. Defendant Cortez grabbed Plaintiff's left arm and Defendant Santiesteban grabbed Plaintiff's right arm. Defendant Navarro stood next to the floor staff office, watching Plaintiff. As Defendants Cortez and Santiesteban began escorting Plaintiff across the section. As they approached the rotunda, Defendant Cortez told Defendant Santiesteban, "Take him down, and make it look good on paper!!" (*Id.* at 6.) About two feet into the rotunda area, Defendant Santiesteban grabbed Plaintiff, lifted him approximately three feet up in the air and body slammed him headfirst into the concrete. Defendant Cortez then placed his knees in Plaintiff's back, making Plaintiff feel paralyzed because Defendant Cortez hit a nerve in Plaintiff's spinal cord. Plaintiff then heard Defendant Santiesteban yell, "so you want to still file a 602 mother…." (*Id.*) Defendant Santiesteban punched Plaintiff twice in the right eye while Defendant Cortez kept his knees in Plaintiff's back.

Plaintiff began to scream as blood began to run down his forehead into his right eye. Defendant Cortez told Plaintiff to stop resisting and began to elbow Plaintiff in the back of the head. Defendant Santiesteban kicked Plaintiff four times in the right rib cage and once in the face. Defendant Santiesteban yelled to Defendant Navarro for Defendant Sanchez to hit the alarm button.

After Defendant Sanchez hit the alarm, other staff entered the rotunda, including Defendant Navarro. Defendant Navarro ensured that Plaintiff was taken to the gym and placed in a holding cage. While Plaintiff was in the cage, Defendant Navarro began to brag and mock Plaintiff. For over two hours, Plaintiff stood in the gym with blood on his face. Defendant Navarro stated that Plaintiff refused medical attention from Defendants Andrezjewski and Brown, which was not true or correct. Although Plaintiff was never seen by Defendants Andrezjewski or Brown, both nurses completed a medical report of injuries and failed to report that Plaintiff was suffering from multiple serious injuries to his head, face, ribs and back. Plaintiff did not receive medical treatment while in the holding cage. Plaintiff begged for care, but was only allowed a blue shirt to wipe the blood off his head and face.

Hours later, Plaintiff was removed from the gym and taken to ASU-1. Plaintiff explained to every staff member that he had been badly beaten by officers and needed medical treatment.

6

While in the ASU-1 holding cage, Nurse Torres told Plaintiff that he had serious wounds to his face and head and to put in a sick call slip. The next day, Plaintiff could barely move.

After Plaintiff received a fabricated rules violation report and fabricated medical reports, Plaintiff filed a 602 for staff abuse. On December 22, 2017, Lieutenant Watkins called Nurse Torres, who claimed that she could only document injuries that she could see. However, Plaintiff's injuries and wounds were still massive, and were videotaped and recorded by Lieutenant Watkins.

**C.     Undisputed Material Facts (UMF)[4]**

1. Plaintiff brought his complaint on May 3, 2018.  (ECF No. 1.)

2. Non-health care inmate appeals are appropriate for allegations of excessive force, failure-to-protect, retaliation, or any other alleged misconduct by correctional officers or their superiors.  (ECF No. 29-1, Attachment 1, D. Foston Decl. ¶ 2; Attachment 2, D. Goree Decl. ¶ 2.)

3. Non-health care inmate appeals are review by the institution Appeals Office and the Office of Appeals.  (Foston Decl. ¶ 2; Goree Decl. ¶ 2)

4. When an inmate submits an appeal that does not comply with regulations governing the appeal process, the Appeals Coordinator will reject (or "screen out") and return the appeal with the reason for the screening, and instructions on how to correct the defect, if correction is possible.  (Foston Decl. ¶ 4; Goree Decl. ¶ 5.)

5. When the Appeals Office receives an inmate appeal, the policy and practice is for an Appeals Coordinator to assign a log number and make an initial provisional determination of the issue raised by the appeal.  (Goree Decl. ¶ 5.)

6. Appeals involving inmate medical, dental and mental-health care issues have been processed by the California Correctional Health Care Services (CCHCS), under the Office of the Federal Receiver appointed in the class-action litigation regarding prison

---

[4] ECF No. 29-2 and ECF No. 31.  Plaintiff "admits" to Defendants' "undisputed statement of facts."  (ECF No. 31, p. 1.)  Defendants' Statement of Undisputed Material Facts (Doc. 29-2) in support of his motion for summary judgment is therefore accepted.
.

health care, Plata v. Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351.  (ECF No. 29-2, Attachment 3, S. Gates Decl. ¶ 3.)

7.  All levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS). This system tracks inmate health care appeals/grievances that were received and ultimately rejected and the reason for the rejection.  (Gates Decl. ¶ 4.)

8.  All health care appeals/grievances are subject to a headquarters level of review, either a headquarters' review or a third level review, before administrative remedies are deemed exhausted. (Gates Decl. ¶¶ 6-7.)

9.  Between December 7, 2017 and May 3, 2018, Plaintiff did not submit an appeal that was accepted for a third and final level of review related to the allegations raised in Plaintiff's Complaint. Plaintiff also did not submit an appeal that was accepted for a third and final level review against Defendants Andrzejewski, Brown, Cortez, Navarro, Sanchez and Santiesteban.  (Foston Decl. ¶¶ 7-9; Gates Decl. ¶¶ 8-9.)

10. Plaintiff did not submit any health care inmate appeals between December 7, 2017 and May 3, 2018. (Gates Decl. ¶¶ 8-9.)

11. Between December 7, 2017 and May 3, 2018, Plaintiff submitted one inmate appeal related to the allegations raised in Plaintiff's Complaint or against Defendants. This inmate appeal, log number CSPC-7-18-00207, dated January 1, 2018, has had a delayed response and is pending.  The first level of review was bypassed.  On January 11, 2018, Plaintiff was informed that his inmate appeal was assigned for review as a staff complaint at the second level of review.  On February 20, 2018, Plaintiff was sent notice that there was an exceptional delay in review of his appeal due to the complexity of the decision, action, or policy and that the due date was extended. Similar notices of delay were sent to Plaintiff on April 3, 2018, June 26, 2018, August 8, 2018, September 19, 2018, November 1, 2018, December 17, 2018, March 18,

2019, and April 30, 2019.  On June 11, 2019, an additional notice extending the

response time was sent to Plaintiff.  (Goree Decl. ¶¶ 7-10 & Exhibit A; Complaint at ¶

47; ECF No. 1 at p. 9:24; *see also* ECF No.1, Compl., pp. 17-18; ECF No. 31, pp. 8-

18[5].)

12. Plaintiff filed one California Government Claim Form with the Government Claims

Program, which was blank as to the State agencies or employees against whom the

claim was filed, date of incident, location of incident, description of the specific

damage or injury, circumstances that led to the damage or injury, and explanation as to

why the State is responsible for the damage or injury. (ECF No. 29-2, Attachment 4,

M. Rodriguez Decl. & Ex.)

**D.      Discussion**

1.   Parties' Positions

Defendants contend that Plaintiff did not exhaust the administrative process against any

defendant before bringing this action or for any claims alleged in his complaint.  Defendants

assert that in order to have exhausted the administrative process before bringing this action,

Plaintiff needed to submit any administrative appeals concerning his claims on or after December

7, 2017, and pursue that appeal/grievance through the final or third level of review before May 3,

2018, when he filed this action.  Defendants indicate that although Plaintiff filed an inmate appeal

dated January 2, 2018, related to some of his complaint allegations, that appeal has had a delayed

response and is pending.  Defendants therefore argue that Plaintiff failed to obtain a final level of

review of the inmate appeal before filing this action.

Defendants further contend that even if the Court determines that the delay in resolving

Plaintiff's appeal exhausted his administrative remedies, Plaintiff did not raise or exhaust any

medical claims or claims against Defendants Andrzejewski and Brown.  Specifically, Defendants

assert that Plaintiff's inmate appeal, CSPC-7-18-00207, does not raise medical claims or claims

---

[5] The corresponding notices of delay are attached to Plaintiff's opposition to the motion for summary judgment, (ECF No. 31), and are accepted as undisputed due to the absence of a reply or objection from Defendants.

against Defendants Andrzejewski and Brown.  Defendants further assert that Plaintiff has not

exhausted or filed any separate health care inmate appeals/grievances.

Plaintiff does not dispute that he filed suit prior to completion of the second level of

review.  Instead, Plaintiff indicates that his appeal, CSPC-7-18-00207, was accepted on January

11, 2018, and processed for a second level response.  (ECF No. 31,  p. 3 and p. 8 (Attachment 1).)

Thereafter, the appeal has had over seven exceptional delays, which Plaintiff argues has exceeded

the 160-day time limit for completion of a second level response under the California Code of

Regulations, title 15, § 3084.8(d).  (*Id.*, pp. 9-25 (Attachment 1).)  Plaintiff complains that both

the regulations and his Fourteenth Amendment due process rights have been violated by the

delay.  In contrast, Plaintiff admits that he failed to file a grievance for medical concerns against

Defendants Andrezjewski or Brown.

2.   Deliberate Indifference to Serious Medical Needs Claim – Defendants

Andrzejewski and Brown

As indicated, Plaintiff concedes that he failed to file a grievance for medical concerns

against Defendants Andrzejewski or Brown.  (ECF No. 31.)  Plaintiff asserts that he has "no oral

argument nor opposition of both medical defendants being removed from proceeding pending

Federal actions."  (*Id.*, p. 5.)  The Court will therefore recommend that Defendants' motion for

summary judgment for failure to exhaust administrative remedies for the federal claims against

Defendants Andrzejewski and Brown be granted.

3.   Filing Lawsuit Before Second Level Decision

The evidence submitted in this case establishes the following sequence of events:  Plaintiff

submitted an appeal dated January 1, 2018, related to the allegations raised in his complaint

(CSPC-7-18-00207).  The first level of review was bypassed, and the appeal was accepted at the

second level review on January 11, 2018.  (UMF 11; ECF No. 1, Compl., p. 17.)

While his second level review was pending, on February 20, 2018, Plaintiff received the

first of at least ten letters advising him of "exceptional delay in review of appeal" due to the

"[c]omplexity of the decision, action, or policy" and that the due date was extended.  (UMF 11;

ECF No. 1, Compl., p. 18l; ECF No. 31, p. 9.)  On April 3, 2018, Plaintiff received a similar

1  notice of delay.  (UMF 11; ECF No. 31, p. 10.)

2           On May 3, 2018, Plaintiff filed this civil rights lawsuit.  (ECF No. 1.)

3           On June 26, 2018, August 8, 2018, September 19, 2018, November 1, 2018, December 17,

4  2018, March 18, 2019, April 30, 2019, and June 11, 2019, Plaintiff received additional letters

5  indicating exceptional delay in review of his appeal at the second level.[6]  (UMF 11; ECF No. 31,

6  pp. 11-18.)

7           Plaintiff did not submit any health care inmate appeals between December 7, 2017 and

8  May 3, 2018. (UMF 10.)

9           Given these undisputed facts and the evidence submitted by the parties, the Court finds

10  that Defendants have met their initial burden by proving the existence of administrative remedies

11  and Plaintiff's failure to exhaust those remedies prior to filing suit.  Therefore, the burden shifts

12  to the Plaintiff "to come forward with evidence showing that there is something in his particular

13  case that made the existing and generally available administrative remedies effectively

14  unavailable to him." *Albino*, 747 F.3d at 1172.  In *Ross v. Blake*, 578 U.S. 632 (2016), the

15  Supreme Court enumerated three instances in which a grievance procedure is effectively

16  unavailable: (1) when the process operates as a "simple dead end" with no actual possibility of

17  relief to prisoners; (2) when the process is so opaque or confusing that it is "essentially

18  unknowable – so that no ordinary prisoner can make sense of what it demands"; and (3) when

19  prison officials thwart inmates from using the process through machination, misrepresentation, or

20  intimidation. *Id.* at 643-44 (internal quotation marks and citations omitted).

21           Plaintiff argues that he could not exhaust his administrative remedies because of the

22  delays in the appeal process at the second level of review, which exceeded the time limits

23  provided for in the regulations.  This argument is not persuasive.  Plaintiff could not have

24  reasonably believed that prison authorities would not respond to his appeal.  It is undisputed that

25  while his appeal was pending, Plaintiff was informed in writing on at least ten separate occasions

26  that there would be a delay in responding to his appeal.  (UMF 11.)  "Prison officials need not

27

28  [6] On July 23, 2019, an additional notice extending the response time was sent to Plaintiff.  (ECF No. 31 at
p. 19.)

11

1    strictly adhere to the time limits for response to an administrative grievance as long as the

2    prisoner is given an explanation," as was done here. *Ardds v. Hicks*, No. 1:19-cv-01738-SAB

3    (PC), 2021 WL 3471595, at \*6 (E.D. Cal. Aug. 6, 2021) (citing *Rios v. Paramo*, 14CV1073-

4    WQH(DHB), 2016 WL 8731085, at \*19-20 (S.D. Cal. July 15, 2016), (rejecting argument that

5    delay in issuing and receiving second level response thwarted exhaustion efforts where plaintiff

6    informed in writing for separate time that there would be a delay in responding to his appeal).

7    Extensions of this nature are permitted by prison regulations. *See Id.*; Cal. Code. Regs. tit. 15, §

8    3084.8(d) and (e).

9          The Court notes that Plaintiff appears to rely on the cumulative delay notices issued by

10   CDCR.  However, at the time of filing this lawsuit on May 3, 2018, the evidence reflects that

11   Plaintiff had only received two notices of delay – one on February 20, 2018, and one on April 3,

12   2018.  (UMF 11; ECF No. 31 at pp. 9 (February 20, 2018), 10 (April 3, 2018, with estimated

13   completion date of May 15, 2018).)  Plaintiff proffers no evidence to demonstrate that this delay

14   rendered the appeals process unavailable.  There also is no indication that Plaintiff was under any

15   imperative to start the litigation or that his case would suffer if further delayed beyond May 3,

16   2018.  Moreover, the statute of limitations for this action, without consideration of any applicable

17   tolling, is two years, but Plaintiff elected to file this action after only about five months.  *Douglas*

18   *v. Noelle*, 567 F.3d 1103, 109 (explaining statute of limitations for 42 U.S.C. § 1983 actions is the

19   state statute of limitations for personal injury actions); *Lamon v. McTaggert*, No. 1:22-cv-01421-

20   ADA-BAM (PC), 2023 WL 4239172 (statute of limitations for §1983 action is state status of

21   limitations for personal injury actions—two years in California).

22         The Court concludes that Plaintiff failed to properly exhaust his administrative remedies

23   prior to filing suit and that he has failed to demonstrate that existing and generally available

24   administrative remedies were effectively unavailable to him.  The Court will therefore

25   recommend that Defendants' motion for summary judgment for failure to exhaust administrative

26   remedies of the federal claims against them be granted.

27   ///

28   ///

1          **4.  State Law Claims**

2          Defendants argue that Plaintiff has failed to comply with the claim presentation

3  requirements of the California Government Claims Act and his state law claims in this case must

4  be dismissed.

5          Under California's Government Claims Act,[7] set forth in California Government Code

6  sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public

7  employee or entity unless the plaintiff first presented the claim to the proper entity and the entity

8  either acted on the claim or the time for doing so expired. *Munoz v. California*, 33 Cal. App. 4th

9  1767, 1776 (1995) ("The Tort Claims Act requires that any civil complaint for money or damages

10 first be presented to and rejected by the pertinent public entity.").  The purpose of this

11 requirement is "to provide the public entity sufficient information to enable it to adequately

12 investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San*

13 *Jose v. Superior Court,* 12 Cal. 3d 447, 455 (1974) (citations omitted). The "factual

14 circumstances" set forth in the written claim must "correspond with the facts alleged in the

15 complaint." *Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (1982). Compliance with this

16 "claim presentation requirement" constitutes an element of a cause of action for damages against

17 a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1244 (2004). Thus,

18 in the state courts, "failure to allege facts demonstrating or excusing compliance with the claim

19 presentation requirement subjects a claim against a public entity to a demurrer for failure to state

20 a cause of action." *Id.* at 1239 (fn. omitted).

21         Here, Plaintiff filed a California Government Claim Form with the Government Claims

22 Program, which was dated December 28, 2017.  (UMF 12.)  However, the form was blank as to

23 the State agencies or employees against whom the claim was filed, date of incident, location of

24 incident, description of the specific damage or injury, circumstances that led to the damage or

25 injury, and explanation as to why the state is responsible for the damage or injury.  (UMF 12.)

26

27 _____

[7] The Government Claims Act was formerly known as the California Tort Claims Act. *City of Stockton v.*

28 *Superior Court,* 42 Cal.4th 730, 741–42 (2007) (adopting the practice of using Government Claims Act
rather than California Tort Claims Act).

1   The claim form therefore fails to provide sufficient information to allow for adequate

2   investigation of the claims.  Plaintiff does not dispute that he has failed to comply with the

3   requirements of California's Government Claims Act.  (ECF No. 31, pp. 4-5.)  Accordingly, the

4   Court will recommend that Plaintiff's state law claims be dismissed for failure to comply with the

5   claim presentation requirements of California's Government Claims Act.

6   **IV.    Conclusion and Recommendation**

7          Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for

8   summary judgment (ECF No. 29) be GRANTED.

9          These Findings and Recommendations will be submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within

11   **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

12   file written objections with the Court. The document should be captioned "Objections to

13   Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file

14   objections within the specified time may result in the waiver of the "right to challenge the

15   magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

16   (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

17

18   IT IS SO ORDERED.

19     Dated:   **February 15, 2024**           /s/ *Barbara A. McAuliffe*

20                                              UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28